May it please the Court, my name is Chuck Hansberry and I'm the attorney for the appellant of Prudential Insurance Company of North America. The question that is presented to you here today on appeal is one that's receiving a lot of attention from this court and from other district courts around the country and most notably just within the last nine days from another panel of this court and the question is whether a third party who is not designated as the plan administrator in an ERISA plan but is rather designated as a claims administrator can be liable for the statutory penalties for a penalty up to $100 a day. And the statute provides that quote any administrator that fails to provide documents which it's obligated to do can be held liable for a penalty up to $100 a day. That penalty was later raised to $110 a day by regulation. And it's Prudential's position that this issue was squarely addressed and decided by the Ninth Circuit in an earlier panel back in 1989.  And in that case the claimant was a participant in a plan and had communications with Aetna Life Insurance who was the insurer of the plan and Aetna responded to that correspondence and informed them that they were the plan administrator. And then in a lawsuit in which the claimant sought the statutory per day penalty an earlier panel of the Ninth Circuit held that no you look to the definition of administrator and if there's not an administrator designated under the plan then it's the plan sponsor which was the claimant's employer not Aetna Life Insurance. So despite what Aetna told them they still were not the plan administrator and therefore could not be the entity that could be liable for the statutory penalty. Since that decision in 1989 that ruling has been applied and upheld at least four times in published opinions by the Ninth Circuit Court of Appeals. And it's been applied in almost every circuit court of appeal across the country where there hasn't been circuit court decisions there's been lower court decisions within that circuit. The only two circuits that really kind of adopt a possibly different analysis is this First Circuit and the Eleventh Circuit that adopts this possible de facto analysis. And in the First Circuit they specifically say look to apply a de facto analysis the plan administrator and the claims administrator have to be a very related entity like a subdivision or a panel or a group of folks or maybe an HR manager. Here we have completely separate ones. In this case, Your Honor, Mr. Yonkin was a participant in a long-term disability plan that was provided through his employer with the parent corporation of his employer Washington Corporations. The plan in place specifically says that Washington Corporations is the plan administrator. The plan also is insured by the Prudential Insurance Company or the long-term disability benefits are insured by Prudential. And Prudential is named as the claims administrator under the plan. Plaintiff identifies that as the basis the principal basis for distinguishing Moran. That is that Moran there was no party designated administrator so you had to figure out from the statute and wanted being the plan sponsor. In this case there are two administrators separately designated not coincidental or co-equal. But there is at least some designation of Prudential as an administrator. Sure. And I think that if you took a look at the statute just very peripherally and just glanced at it, possibly you could reach that distinguishment. The problem is that you have to look at the statute that says any administrator and look at the definition of any administrator and it's a singular entity. It is the entity designated in the plan itself as the plan administrator. So why do they say any administrator? What we put out in our brief is that you can read any administrator one of two ways. You could read any administrator to mean any of multiple administrators of a single plan or any administrator of any plan out there. And what you have to do is go beyond just that one single instance of any administrator in 1132. You've got to look at the definition of actual administrator which uses just the singular term throughout it. And then you also have to look at the congressional history of the passage of RISC back in 1974. And what you find when you look at that congressional history is that Congress used the term administrator and plan administrator sort of interchangeably. Because, in fact, the joint committee report for 1132 and 1024 both used the term specifically plan administrator. And what Congress intended to do in that situation is to have a single entity. I mean, to borrow a line from a Hollywood movie, there really can just only be one. And you have a single designated plan administrator who's responsible for certain things. And I think this issue was just very recently addressed from an earlier, on April 15, 2008, after we fully briefed this and we filed two supplemental notices of authority. Another decision was issued by the District of Montana, another judge within the District of Montana, where the plan in place specifically said, employer, you're the plan administrator. Insurer, or third party administrator, you're the claims administrator. And the point, or actually didn't even use the term claims administrator, but referred to the third party administrator, the TPA, as an administrator. And the plaintiff in that case, that's Smith v. Earhart out of the District of Montana on April 15, 2008, the court took a look at it and said, no, the reference there is to a claims administrator. And a claims administrator is different from the plan administrator, as ERISA defines it, at 29 U.S.C., I think it's 1002 sub 16A. And so literally there really can only be one plan administrator. What Mr. Yonkin has not done is cited a single case where a court has distinguished Moran on this idea that there can be multiple administrators and that anybody uses the moniker administrator in their name somehow is caught up by a section 29 U.S.C. 1132. Well, reading statutes is frequently like reading tea leaves, because statutes are written by human beings and it's hard to figure out why they use different language. And I've gone through 1132 and I've seen, in fact, the statute uses, other subsections use the term any in context where there's plainly only one. So it's talking about whoever is out there for whatever plan. And I also see that sometimes they say a plan administrator. Frequently it says, in fact, more often in most of the sections other than the one we're focused on, it says plan administrator, and this one just says administrator. And so you could try to argue the absence of the word plan may be significant. There are lots of ways you're struggling here. Is there a logic behind this that explains why the only entity that should be on the hook for statutory penalties is the one that you've identified as the plan administrator, not the claims administrator? Sure. I think that what happened, Your Honor, and this is me going back trying to recreate the history as well, because it is very difficult. I think back in the passage in 1974 of ERISA, what really occurred is there was an envision that there would only be a single administrator and it would be the administrator of the plan, hence the definition written in the singular. So any time you see the word administrator throughout the statute, you've got to kind of look to the definition and the envision from Congress that it's only an administrator, a single entity. And then ultimately throughout the statute you will see sometimes they use the term administrator, sometimes they use the plan administrator. And it's very clear by looking at the way that they use it throughout the statutes and also the legislative history is that they were using the term synonymously, that they weren't trying to draw a distinction between a single entity plan administrator in one part of the statute and multiple plan administrators or multiple plan claims administrators in other parts of the statute. The other thing, too, is back when ERISA was passed in 1974, there was no such thing as a claims administrator. That's something that has sort of evolved over time as the industry starts to evolve. Because you can have, for some folks you have an insured plan, and like in this case Prudential is insuring the plan, and they need a title because they're making the claims decisions. Some plans you may actually have a self-insured, but they hire a TPA, a third-party administrator. And they have a title because they've been delegated that very specific task of looking at and determining claims for benefits. And so they've used the term claims administrator. But throughout this, they've been very clear, or at least most plans written today, the plan in place back in the Moran decision, 1989, wasn't nearly as clear, specifically designate in the plan whose role is who. And in this plan, it's very specifically designated that Washington Corporation is the plan administrator, Prudential is the claims administrator. Then the plan in this case even goes a step further and makes it very clear that if you want a copy of the plan document, go to the plan administrator. Okay? And then also what happened in this case from a factual perspective is that constantly, about two or three times throughout this, there was a request for plan documents, and Prudential would say, or there would be a request for documents. And Prudential would say, here's the claims documents, this is what we need to provide you. However, if you need a copy of the plan, you need to go to your plan administrator. And so all Prudential was trying to do was follow the law, follow the plan as it was specifically written, and administer the claim. Now, I think that the other thing that is important is just nine days ago, another panel of this court reached a decision in this, and I'm probably going to mispronounce this name, Sargo v. Danone-Waters case. And in that situation presented a very similar scenario here, where you had an insured plan by MetLife and an employer that was designated as the plan administrator, Danone-Waters. And Sargo tried to bring a claim for penalties, and claimed in that is that the claims administrator, MetLife, had certain obligations under the regulations to provide documents. And the panel in that case held that, no, the regulations may have expanded what kind of documents have to be provided, but certainly didn't expand the notion of who is responsible for providing them. And in fact, when I stepped forward and said, it may be a situation where the plan administrator has to go to the claims administrator in order to meet their obligations, but that doesn't mean that the claims administrator, in that case MetLife, and in our case Prudential, is still on the hook for providing them. So I think that Moran has just been a consistent pattern throughout this. This case does present a slightly different wrinkle, whereby the insurer is specifically has the moniker administrator, but in this case a claims administrator, in the plan document. Okay? And that may be the only distinguishing difference between this and Moran. But like I said, there's a lot of other decisions throughout the Ninth Circuit within the district court that are presented to the courts, where that specific factual scenario has been presented to the court, and every time, citing Moran, they have held that's not a distinguishing feature, only the plan administrator can be responsible and liable for the penalties. My worry, even if I adopt your idea here, is that somehow what happened here, that the attorney's fees did not really rise out of the same core facts, because even if I adopt what you want me to, I have to think about that particular situation. It seems to me that the numerous letters from Youngkin's counsel to Prudential, to Washington Corporation, demonstrate that Youngkin's attempt to obtain this 2000 version, 2002 version of the plan, and his argument about they applied the wrong plan, go hand-in-hand. It seems to me that Youngkin's attempt to obtain this 2000 version, seems to me, in fact, Youngkin was not actually able to assert his claim for benefits until he got the plan. So how is it not out of the same core? Okay. Primarily, and I don't think the Hensley case, the U.S. Supreme Court case that kind of makes that analysis, the applicable analysis, says that it has to be, you know, it would be a much easier analysis if temporarily they weren't connected or something like that. But if you back up, the claim for benefits in this case is under 1132A1B, and that claim is only made against the plan, because the plan itself, as an entity, has the ability to pay those benefits. The benefits, in this case, are insured by the Prudential company. Well, I understand that. Okay. So the claim for benefits, in which he was successful at, after a quick administrative remand and the mistake that Prudential made was paid. And that claim is paid, is insured through Prudential, but the claim itself is made against the plan. The claim against, for penalties, is made against an entirely separate defendant, the Prudential Insurance Company, specifically. And so realistically, where the two are connected. Well, but the honest truth is, his work on the unsuccessful claim for the penalties had to include his numerous attempts to get the plan, or he wouldn't have been able to do anything. So how do I get that out of the court? Well, it's actually fairly easy. And realistically, all of the work, you cannot, you cannot recover attorney's fees for work that is done prior to litigation. I mean, there's a little bit of overlap there, but through the administrative process, okay? And I just do not understand what you just said. I mean, a plaintiff attorney is obligated to undertake some investigation. I mean, Rule 11 imposes obligations, nothing else. All that gets charged, all that gets covered. So it isn't like attorney's fees start with the commencement of a litigation, or with the filing of a complaint. If all of this preliminary work was necessary to get the plan documents, and even if there had been no statutory penalty, you would have expected the plaintiff's attorney to do all of that work to get the plan documents, since that was essential to make the rest of the case. So if the plaintiff's attorney is obligated to do all of that work to make the rest of the claim proceed, how is that work not covered by the main claim for disability benefits in the first place? And actually, believe it or not, Prudential never objected to that initial, I mean, when we went through and briefed this issue of attorney's fees, and I got opposing counsel's billing records, we went through and tried to be incredibly generous to include on the side of payment of those attorney's fees, because we recognized he had to bring the claim for benefits, he did prevail on that, and all of that work was done prior to litigation. And all of that work leading up to it, getting that, was never objected to. It was just that portion of the litigation where we briefed the issue of summary judgment on who's responsible for the penalties, and went through that. Part of it is the part that was objected to. And I guess where there's definitely a connection there where you can't really decide or determine whether somebody is working on trying to get their claim for benefits or working on the penalties, that was never objected to by the Prudential company. What was objected to was the very specific litigation steps that were taken in this case in order to get the penalties. There was at least sort of cross motions, they didn't come exactly at the same time, but there were at least two motions for summary judgment on this issue of penalties, and that time very specifically was only spent on the claim for penalties. Well, then if you prevail on the first part of your argument here, shouldn't we just remand to the district court to sort of sort through all that? Because there's two parts to Hensley. I mean, there's the related test, and then even if it is related, the court can sort of look at the equities and determine whether to cut back based on a failure to prevail on all claims. Absolutely, Your Honor. I don't at all suspect that you guys are going to actually determine on Tuesday what day, what bills could get paid. But what happened, and actually, since Prudential did not prevail on anything, I don't think that's going to be the case. I think that the court did make the determination that if the court did not prevail on anything at the lower court, obviously the lower court was justified in rewarding all fees, okay? But the lower court did make that determination that the claims were too intertwined, that you could not make a distinction between the two, and in any event, you didn't prevail on any differential. What I would ask that this court do is if it grants the appeal and reverses the district court on the first issue, that it remand it with also the direction that the two claims aren't so intertwined, and that the court, in its discretion, should make some distinction between the claims, and in its discretion, adjust the fees as necessary. And what is my standard of review? Well, I think the decision on whether the claims are core, on the fact that the core claims is what he said, they're all interrelated. Therefore, it doesn't matter. And besides that, they're the losing party anyway, or the winning party anyway, or however he put it. So if it's an abuse of discretion, and him already making his decision, going through the records, deciding what to do, shouldn't I give him all the definition? Your Honor, I think the decision on whether the two claims are intertwined or not, particularly where they actually have to be made against very different defendants, can be a conclusion of law. Well, I understand about the intertwined, but he was making the decision as to how many fees, and whether intertwined, and all of that kind of stuff, as to this particular matter. And if I find them also intertwined, such that he should have awarded the fees, he's already made the discretionary decision, if at all. Your Honor, that may be the case. The only problem is he made that discretionary decision at the time that Prudential was 100% unsuccessful. And so that, I think the fact that this litigation has really been about this penalties issue from the get-go. We did have some movement in the beginning with regard to the claim for benefits, because we wanted to get it back into Prudential's hands in order for them to apply the correct plan. But once that occurred, those benefits were paid. And it was done rather quickly. They were paid, the back benefits were paid. We had a little bit of a dispute over the applicable interest, but we reached a resolution on that. Realistically, where this litigation has lied from the beginning is over this issue of penalties. As I read the order, it says basically that's like 24, 25 hours' worth of time. We've got a total award of $46,000. If we're talking that number of hours, just doing the quick math, we're just not talking about very much money. And I can't help but think that fighting over attorney's fees is going to more than exceed the amount of money that we're fighting about. It seems wildly impractical about this. And that may be the case, Your Honor. And it may be something that simply can be resolved amongst attorneys. This has been about a very important issue on a nationwide basis for Prudential. And I understand that. I mean, we're not even talking about a ridiculously amount of penalties either. We get to this point only if you win on the statutory penalty issue. If that happens, I suspect your client would be happy with that result and not going to lose a lot of sleep over the attorney's fees. So with that, we'll give you a minute for rebuttal, and we'll turn to the plaintiff's attorney to hear his position. Thank you, Your Honors, and may it please the Court. My name is Jamie Tao, and I represent Jim Yonken, who found himself in this rather convoluted affair with a couple of administrators that has now resulted in this appeal. To summarize his position, it is essentially that there are two administrators in this case, that the statute imposes liability for penalties on, quote, any administrator, that any definition of the term any, including my old black law dictionary from law school, says any means some, one out of many, an indefinite number, which is, of course, consistent with just about every other dictionary that there is. My position is that the district court correctly applied that statute and concluded that penalties were appropriate as against Prudential. Well, but that's any administrator who has the obligation defined in another section, and the other section doesn't say any administrator, it says the administrator. I agree with that, Your Honor, but our position on that is that the use of the term the administrator encompasses entities like, in this case, Prudential, on two bases. One, there's no question that Prudential is, quote, an administrator subject to liability under ERISA's laws. And secondly, under the facts of this particular case, the Washington Corporations, which was not necessarily my client's direct employer, but rather, I guess, a parent company of his employer, basically delegated all decision-making authority on to Prudential, and, of course, it was Prudential that handled the entire claim. If we're trying to understand the structure of this statutory framework and the meaning of any administrator, just standing back for a minute, doesn't it make common sense that the plan administrator would be the one responsible for providing the plan documents to the participants where the claims administrator's duties are sufficiently removed from that in actually processing the claims? That distinction would be pretty clear. In other words, the plan administrator seems like the right entity to provide the plan documents. Well, and let me answer it this way, Judge, I think what has happened here, and opposing counsel has touched on it, is that, and I can't pretend to give you an answer from 1974 to now based on all the case law, but I think what's happened as a practical matter is that plan administrators like Washington Corporation, in this case, as defined as such under ERISA, have in practice hired insurance companies like Prudential and delegated, of course, all the decision-making on to them. And so, for instance, in this litigation, we have the applicable plan, and you'll see it's Prudential's name all over it. This is the booklet that my client would receive. It says in there you go to Washington Corporation if you want plan documents. At the very end it says that, Judge, but it also says in there repeatedly that you have the right to request information, and I'll find it here exactly, I have it. It says when you appeal, number one, the person that you're dealing with is Prudential. And I'd ask this Court to also remember not only the purposes of ERISA as remedial legislation, but also to look at this not from what we know now in hindsight, but from the viewpoint of a claimant like my client who is dealing with almost exclusively the Prudential Insurance Company. In fact, factually what happens is he goes in to Washington Corporations, who's actually trying to help him through this claim, and gets the paperwork. It's all on Prudential, letterhead, or the application forms all says Prudential on it, just like the booklet, fills it out, sends it off to Prudential, which is all fine until the claim eventually gets denied, and then we have this issue of why does it get denied using the wrong plan from the wrong year. And so at any rate, Judge, what that obviously requires Mr. Yunkin to do is to go through this appeal process, which he attempted to do, and if you look in the plan, and I've got it as evidence record 37, it's page 35, talks about appeals, and it states, upon your request you will also have access to and the right to obtain copies of all documents, records and information relevant to your claim free of charge. And I don't think anyone can really argue that the correct plan is not a relevant document when this claim is being denied using the old definition from the wrong plan. Well, let me ask you this. Moran says, speaking of prior precedent in Massachusetts Mutual versus Russell, a Supreme Court case actually, they say Russell will require us to limit liability under Section 1132C to the targets expressly identified by Congress in Section 1002.16. So this Court has already spoken as to the limitation, and that you are expressly limited to the targets identified in 1002.16. So tell us why prudential is such an identified target. Okay. I think in the other statute that's referenced there, it talks about, in terms of the definitions, the definitions section, I recall, was the first definition in the Moran case. The issue in that case being there was no designated plan administrator, so we have to go to the first prong of the statute, I believe, which tells us we look at a plan sponsor if there's no designated plan administrator. The one we believe that is at issue here, Judge, is the one that says the administrator that's identified in the plan, and in this case we believe the district court correctly recognized there are two. And again, getting back to, as a practical matter... But is it your view, 1002.16 is irrelevant, I'm trying to understand, outside the facts of Moran, or are you arguing a claims administrator falls under the definition of 1002.16? Right. And I'm not remembering the subsection number off the top of my head, but we believe that you read section 1132c.1, any administrator, along with the section that says the administrator identified in the documents, and in this case there are two identified. Number one, that's our first position. Number two, as a practical matter and under the facts of this case, Washington Corporations gives all of its rights and responsibilities on to Prudential. In fact, it cross-claimed against that entity when there were summary judgment motions filed by Prudential on the penalties issue. Washington took the position that they had given all their rights and authority to Prudential, and Prudential ought to be responsible, not Washington. Well, other than the district court in Montana, have there been any courts that have applied 1132c to a claims administrator or a third-party administrator? Well, I think opposing counsel has mentioned most of them, Judge. Unfortunately, there aren't dozens, but there are a couple of circuits that have adopted the let's look at the facts of the case approach and let's see what this entity is doing and let's determine it on that basis. There are others that have, I believe, Hummel, Desai is one of them. Certainly the Snow case from Montana has, I think, looked at the statutory language in the same fashion we're arguing here and as was decided here. But for you to even get in the door, wouldn't we have to sort of broaden the Ninth Circuit jurisprudence to include the de facto administrator rule? I think the court would either have to, you know, apply any administrator languages I've argued. Let's assume that's not going to happen. Okay. Then I think you'd have to look at consideration of some courts call it the de facto administrator rule. What I kind of call it is let's look at the statute and let's see what was intended. And I think what was intended was that these administrators who are making the decisions ought to be the ones responsible for the penalties under the law. We have a statutory framework. Isn't that an argument you should be making before Congress and not us, that they need to change the law to reflect the realities on the ground today? I thought about that this morning. Were the outcome not in my client's favor, Judge, I hope that's not the case. I think courts can look at and should look at the term any and apply it as it's set forth in the statute using its common and certainly legal language rather than, I think, accept Prudential's invitation to put the word plan after the statutory penalty. And if you look also at the penalty. I'll ask you a question, which may be a little irrelevant, but it bothers me every time I have this on the district court. Why don't you sue Washington Corporations? We did file a suit, Your Honor, against Washington Corporations in the lower court. The district court ruled that there should not be any penalties assessed rather against Washington Corporations. Why didn't you appeal? We've not appealed that, Judge, I think partly because if you look at it factually, Washington Corporations was trying to help this gentleman. If you look at the written request rule, which is another rule we'd have to comply with, my client's written request was addressed to Prudential, not to Washington Corporations, even though, as it turns out, he went into Washington Corporation office and was seeking help to appeal his claim. Well, my worry is, as me looking at the record and trying to figure this out, I had some idea about what you were just about to tell me, and it seemed to me that if one were to come to the point where one is, given that Prudential argues one thing and Washington does another, it's not unusual for defendants to sue one another or plaintiffs to sue one another to preserve their claims when you've got all this going on. And so I'm just wondering, I thought maybe an appellate issue might come up from what the good old judge did regarding Washington Corporation. We haven't argued on appeal here, Judge, any claims against Washington. Washington's not here, of course. But getting back to the rationale and part of that, I'd like this Court to look very carefully at some of these documents that will explain why that happened and why it is that on May 5, 2003, he goes into Washington Corporations where he's had representatives of that entity communicating things on to Prudential and faxes from their fax machine basically on to Prudential, which is, I think, an important fact in this case. And the reason, if you look at it, you'll see, number one, the plan booklet supports that, but number two, and I think this is an important point, if you look very carefully at Prudential's denial letters, in particular, the first, I think it's the first denial is December 23, 2002, and it's in the appellant's excerpts of record, pages 65 and 66. This is, of course, long before Mr. Youngkin has hired an attorney, and this is also after the plan has been amended, and Prudential, of course, is denying his claim with the wrong plan. But it informs him, you may appeal, and it states, you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your claim. And then it tells him the written appeal should be submitted to, and it says Prudential. So then we get to, I believe, the second denial from Prudential, April 17, 2003, and you'll find this in the excerpts of record from the appellant at ER 68 and 68. This is what I call the second denial letter. And, of course, by this time, we know factually Washington Corporation itself is telling Prudential, hey, you're applying the wrong definition here. You're using some dictionary of occupational titles or something when it's our understanding you're supposed to be using our definition of what these locomotive engineers are doing, in particular, on our railroad. And the issue, of course, was there were doctor's notes indicating that with what happened to his spine from the wreck in Idaho resulted in a condition that kind of the jarring and the lateral ride that these guys get out on the locomotives wasn't in the cards for him. And Prudential was telling him, well, you can lift a knuckle of 80 pounds or something like that. But at any rate, so April 17, 2003, comes along, and the Prudential denial letter again tells him, you are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to your claim. Please forward your appeal request to me at the above address. And this is Christine Pape, the manager from Prudential. And so Mr. Yonken writes his letter of May 5, 2003, which you all also have, asking for all relevant information pertinent to his claim, faxed from a Washington Corporation fax machine, sent off to Prudential. The other thing that I struggle with here is, and I appreciate your concerns, and I appreciate your comments, too, is figuring out a practical way to deal with this. But when we look at what happened to this poor guy, he's asking Prudential for all this pertinent information. Prudential knows from Washington Corporation it's not using the right plan. It continues to deny his claim. And I eventually get involved, and as the Court well knows, wrote to both parties requesting information as best that I could. And then you have Prudential saying we'll give you certain information, but you should get other information back over here from Washington. If you look at the Washington Corporation letters that I got back, they gave me the amendment, which just kind of was the cat out of the bag that this is the wrong plan that was being applied all along. But if you're essentially arguing Prudential acted in bad faith, I mean, isn't that remedy available to you, a bad faith claim against Prudential? I mean, you're asking us to read the statute in the context of Prudential's bad faith behavior, what you allege is their bad faith behavior in sort of putting under the mattress the appropriate plan, the plan change. Well, I mean, I don't think my client has a bad faith claim under Montana state laws. And that's part of the rub here, I think, at least that we've tried to convey to this Court, is, you know, the way it used to be in cases factually like this, people would try to allege a bad faith claim against an insurer like Prudential. And this circuit and many others, and I believe the U.S. Supreme Court as well, has repeatedly held those claims are preempted. And so ruling has recognized that entities like Prudential, and even Prudential, is a, quote, plan administrator. All right. Okay, so if it's preempted, I understand that. But I'm just having a hard time understanding how we use these facts to read the statute. Well, and that's kind of what I'm getting at, because I'm trying to find a, I'm trying to address this practical notion that there ought to be a simple and expedient way for these people to get the information. And I guess bottom line, my argument is the decision-maker ought to give it to them. And in this case, that's Prudential to address the Court's concerns there. But the other irony here, factually here, is that it's Prudential that's claiming it doesn't have the obligation to produce the correct plan that gives up to me, without comment, the correct plan, not Washington Corporations. Washington Corporations gives me a letter authored by Prudential telling me that this plan has been amended, which, again, in hindsight, we all now know that there were e-mail going back and forth explaining all this to Prudential before it repeatedly decided to deny this claim, and so on. I'm running a little short on time. I don't want to spend a lot of time on the attorneys' fees issue other than to tell this panel that I'd ask you to consider, not only with respect to the attorneys' fees, but with respect to the other issue, the purposes of ERISA, that it is a remedial statute, that it's supposed to be construed in favor of claimants like my client. I'd ask this panel to see this through the eyes of my client, who I think did everything he could to get the pertinent information for his claim. I'd ask all of you to look at and consider that it took months into this litigation to have Prudential finally reverse itself and concede that it had applied the wrong definition all along. And if you look at things, what you'll see is that there were and remain issues being fought over. For instance, the attorneys' fees. Should people who represent people like my client have to run the risk of going all the way through and really prevailing all the way and then confronting an appeal, only to have their attorneys' fees either lopped off or perhaps nullified? And I'd suggest to you that that's a, I know it would make it awfully hard if I was looking at this case when it came in my door, to be able to handle a case like that, not to say we shouldn't all do pro bono and so on, but again, I think that's a pretty tall order and would be contrary to statute to say, well, if you are going to go through, and it would take a lot of court time probably, too, to go through and say, well, you won on this issue, you lost on this issue. I think that's contrary to Hensley and the numerous Ninth Circuit cases that we put in our brief. I will tell this panel we also believe there are some procedural issues here in terms of the timing, which were noted on both the attorneys' fees issue and as to the penalties issue. With respect to the penalties issue, we've argued that the objections were not timely made to the magistrate's ruling. As to the attorneys' fees issue, Judge Malloy in the lower court ruled that Prudential essentially didn't state a legal objection to the magistrate's ruling on the attorneys' fees, and he went on, of course, to do his own review. He found the objections insufficient. I'd ask the court to defer to the lower court on the attorneys' fees issue on two bases, on the standard of review issue, on the fact that we've already had a big hearing on this and argued whether certain hours spent on certain things and so on should be dissected out. In conclusion here, again, I'd ask the court to apply the statutory language to consider carefully the facts of this case. I acknowledge the Moran decision and the more recent, and I can't say the name correctly either, I think it's Skrow decision. I think Skrow had very different facts. I don't think it presented the per se penalties issue. On the other hand, I wish it wasn't there, but it is. And I'd ask this court to apply the statutory language to look very carefully at the facts of this case, and if it's not going to do that, to adopt some kind of analysis that will bring some fairness and understanding to these people who I would submit are invariably dealing almost exclusively with entities like Prudential handling these claims, and in this case Prudential concededly is an administrator. And I see I'm out of time. Thank you again for the opportunity to be here on behalf of myself, because I've never been here, and also my client, who very much appreciates your consideration in this, I submit, very important case. Thank you. Thank you for your argument, Mr. Chancellor. I said I'd give you a minute, so have at it. Your Honor, I just want to address real quickly, I think it was the comment from Your Honor, Judge Seabright. Prudential never hid the plan under the mattress. They made a mistake. Well, I'm saying that was his allegation is that's what was happening. Okay. They made a mistake in the Ninth Circuit by applying the plan in effect at the time of the disability. In the Second Circuit, where Prudential is actually located, that is the law. You apply the plan at the time that the person was disabled. Nobody, when they said you were applying the wrong plan, said that's not the plan. That's not correct under Ninth Circuit. They just said you're applying the wrong plan. Prudential wrongly, admittedly, said, no, you apply the plan at the time of disability. Every time there was a request for documents, the first request was for all documents, they immediately provided all claims documents, all reviews, all that stuff, and said, look, you need to go to your plan administrator for your plan. Why Washington corporations didn't hand them the plan, I don't know. And Prudential, for all it knows, thought Washington corporations was providing the plan document. That's the only reason why. We thank you. We thank both counsel for the argument. The case just argued is submitted. We are adjourned. All rise. This court for this session stands adjourned.
judges: Clifton, Smith, Seabright